# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILLIP L. ANDERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SECURITY FINANCE OF IDAHO, LLC (d/b/a MAVERICK FINANCE),<br><br>　　　　　Defendant. | Case No. 4:12-cv-00487-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendant Security Finance of Idaho, LLC (d/b/a Maverick Finance)'s Motion for Summary Judgment (Dkt. 30). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Plaintiff Phillip P. Anderson's two-count Complaint alleges that Maverick Finance violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), by calling Anderson's cellular telephone seeking to speak with Anderson's daughter-in-law on

seven different occasions, from January to April 2012. For the reasons set forth below, the Court will grant summary judgment in favor of Maverick Finance on both counts.

## BACKGROUND

Plaintiff Phillip P. Anderson's daughter-in-law and tenant, Lisa M. Anderson, applied for and received loans from Maverick Finance. *Def's* SOF ¶ 3, Dkt. 31. As part of the application process, Lisa Anderson listed Anderson as her landlord, a relative, and a reference on her loan applications, complete with Anderson's address and telephone number. *Id.* As a routine part of underwriting the loan, Maverick Finance's employee, Ismael Vega, contacted Anderson on January 5, 2010, to verify Lisa Anderson's status as Anderson's tenant. *Id.* Lisa Anderson was married to Anderson's son, and she lived in Anderson's home. *Id.*

A year or so later, Lisa Anderson apparently defaulted on the loan, and Maverick Finance attempted to contact her in connection with the loan on multiple occasions from December 9, 2011, to April 26, 2012. In each of these attempts to contact Lisa Anderson, a Maverick Finance employee manually dialed and specifically called Phillip Anderson's telephone number – which was not denoted as a cell phone number on the documents signed and submitted by Lisa Anderson to Maverick Finance. *Id.* ¶ 5. Sometimes the employee would leave no voicemail message, sometimes the employee would leave a message, and other times, the employee would speak directly with Anderson. *Id.* On each occasion, the Maverick Finance employee contacted Anderson for the purpose of asking him to pass along a message to Lisa Anderson to call Maverick Finance. *Id.*

Specifically, the following sixteen telephone calls were made by a Maverick Finance employee to Plaintiff Phillip Anderson's telephone number (208) 201-0632:

1. December 9, 2011 at 10:53 a.m. (no answer);

2. January 12, 2012 at 9:56 a.m. (Anderson said he will give Lisa M. Anderson a message to call);

3. January 13, 2012 at 2:46 p.m. (Anderson said he would give Lisa Anderson the message to call the office);

4. January 27, 2012 at 10:07 a.m. (no answer);

5. January 30, 2012 at 10:14 a.m. (Anderson said he would give Lisa Anderson a message to call the office);

6. February 9, 2012 at 1:48 p.m. (Anderson said he will tell Lisa Anderson to call);

7. February 10, 2012 at 1:39 p.m. (no message left);

8. March 20, 2012 at 2:54 p.m. (left voicemail message);

9. March 26, 2012 at 1:11 p.m. (no message left);

10. April 6, 2012 at 10:38 a.m. (no message left);

11. April 9, 2012 at 9:03 a.m. (no message left);

12. April 10, 2012 at 1:06 p.m. (Anderson said he will give Lisa Anderson the message);

13. April 16, 2012 at 6:26 p.m. (no message left);

14. April 19, 2012 at 11:49 a.m. (left message to call the office);

15. April 23, 2012 at 5:51 p.m. (no message left);

16. April 26, 2012 at 4:59 p.m. (Anderson said to not call him again, and that he doesn't know where Lisa Anderson lives because she changed it).

*Id.* ¶ 6.

According to Maverick Finance, during a telephone conversation on April 26, 2012, Anderson asked the Maverick Finance employee to stop calling him. *Id.* ¶ 7. Maverick Finance says this is the first time Anderson requested they stop calling. *Id.* Maverick Finance promptly ceased the telephone calls to Anderson's number. *Id.*

Maverick Finance's telephone system does not have the capacity, and is not capable of being modified to have the capacity, to store or produce numbers to be called, using a random or sequential number generator, and to dial such numbers. *Id.*

While Maverick Finance was attempting to contact Lisa Anderson regarding her outstanding debt owed to Maverick Finance, the principal purpose of Maverick Finance's business is not the collection of debts. Rather, the principal purpose of its business is the making of consumer loans, and the servicing of loans it has originated. Maverick Finance does not collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another person or entity besides itself. Rather, Maverick Finance's collection activities are confined entirely to efforts by Maverick Finance to collect debts owed to it directly by its delinquent customers. *Id.* ¶ 11.

## ANALYSIS

1. **Telephone Consumer Protection Act**

The TCPA provides, in pertinent part, that "It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system* or an artificial or prerecorded voice … to any telephone number

assigned to a paging service, cellular telephone service … or any service for which the called party is charged for the call." 47 U.S.C.A. § 227(b)(1)(A)(iii)(emphasis added).

The TCPA, 47 USC § 227(a)(1), defines "automatic telephone dialing system" as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id.*

The evidence shows that Maverick Finance did not use an automatic telephone dialing system to contact Anderson on his cell phone. Rather, it appears from the record that Maverick Finance employees called Anderson's telephone number directly and specifically seeking to speak to a member of his family. Indeed, Maverick Finance's telephone system does not have the capacity, and is not capable of being modified to have the capacity, to store or produce numbers to be called, using a random or sequential number generator, and to dial such numbers. Because Anderson cannot prove a necessary element of his TCPA claim, it must be dismissed.

**2. Fair Debt Collection Practices Act**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692. The FDCPA regulates the collection of "debts" by "debt collectors" by regulating the number and type of contacts a debt collector may make with the debtor.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*." 15 U.S.C. § 1692a(6). The term also "includes any creditor who, in the process of collecting his own debts, *uses any name other than his own* which would indicate that a third person is collecting or attempting to collect such debts. . .. " *Id.*

Maverick Finance is a regulated consumer loan company. The principal purpose of Maverick Finance's business is the making of consumer loans, and the servicing of loans it has originated. Maverick Finance does not collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to *another* person or entity besides itself. Rather, Maverick Finance's collection activities are confined entirely to efforts by Maverick Finance, if and when necessary, and solely on its own behalf and in its own name, to collect debts owed to it by its own customers who have become delinquent on loan accounts owed directly to Maverick Finance.

Based on these facts, Maverick Finance does not fit the definition of "debt collector." Instead, Maverick Finance fits squarely into the FDCPA's definition of "creditor," which is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). The Ninth Circuit has held that "a 'creditor' is not a 'debt collector' under the FDCPA." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F. 3d 1028, 1031 (9th Cir. 2009) (citing 15 U.S.C. § 1692a(6)(A). The FDCPA does not regulate

creditor's activities. *Oei v. NStar Capital Acquisitions*, LLC, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006). Because Maverick Finance is a creditor, and not a debt collector, within the meaning of the FDCPA, the FDCPA claim against it must be dismissed.

## ORDER

**IT IS ORDERED that** Defendant Security Finance of Idaho, LLC (d/b/a Maverick Finance)'s Motion for Summary Judgment (Dkt. 30) is GRANTED.

DATED: March 31, 2015

B. Lynn Winmill
Chief Judge
United States District Court